Mason *v*. Whipple et al.

EDWIN D. MASON *v*. JOSEPH WHIPPLE AND ROBERT RUSSELL.

### Attachment. Receipt.

M., an authorized person, attached upon a writ in favor of G. against B. the latter's cord wood, by leaving a copy of the writ in the town clerk's office, and subsequently took the defendants' receipt for the wood, which was disposed of by them for B's benefit. After the attachment by M., but before this receipt was executed, G., as deputy sheriff, attached the same cord wood

Mason *v.* Whipple et al.

in the same manner upon a writ against B. in favor of another person. The suit of G. *v.* B. resulted in a judgment for G., and the execution thereon was placed in M's hands for collection in season to charge the property attached. *Held*, that such attachment by G. did not discharge the defendants' liability on their receipt to M.

TROVER for a quantity of cord wood. Plea the general issue and trial by the court at the March Term, 1859,—BENNETT, J., presiding.

Upon the evidence the court found the following facts:

In September, 1851, Rolla Gleason was a deputy sheriff of Chittenden county, and as such, on the 17th of that month received for service a writ of attachment in regular form in favor of the National Life Insurance Company against William P. Briggs and the defendants in this cause, declaring upon a promissory note, upon which the present defendants were sureties for Briggs. The fact that they were such sureties was known to Gleason, and the defendant, Whipple, on the 20th of September, requested him to serve the writ and attach Briggs' property, so that they might be secured from further liability on his behalf.

Gleason afterwards procured a writ of attachment to be issued in his own favor against Briggs, and to be directed to the plaintiff, as an authorized person, for service, and on the 22d of September placed it in the plaintiff's hands for service, and the plaintiff served it by attaching, among other property, all the cord wood on Briggs' farm in Jericho. This attachment was made by leaving a copy of the writ in the town clerk's office in Jericho.

After this attachment was made, and not before, Gleason served the writ in favor of the Life Insurance Company against Briggs and the defendants, by attaching in the same manner the same wood attached by Mason, together with other property.

No actual possession of the wood was ever taken either by Gleason or the plaintiff, but on the 15th of January, 1852, the defendants executed to the plaintiff a receipt for three hundred and sixty cords of wood, valued at eighty-three cents per cord, and described therein as attached by the plaintiff in the suit of *Gleason* v. *Briggs.* In the receipt the defendants promised to deliver the wood to Mason, or the bearer of the receipt, on demand. The attachment of the wood by Gleason in the suit in

favor of the National Life Insurance Company was also mentioned in this receipt.

The two suits of *Gleason* v. *Briggs*, and the *National Life Insurance Company* v. *Briggs, Whipple and Russell,* were duly prosecuted to final judgment for the plaintiff in each case, and executions issued therein. In the former suit the execution was directed to the plaintiff as an authorized person to serve and return, and was placed in his hands for collection within thirty days after the rendition of the judgment, and within that time he demanded the wood of the defendants upon their receipt, and they neglected to deliver it, and the execution had not been paid.

The defendants were obliged to pay the judgment in favor of the Life Insurance Company against Briggs and themselves, and by the consent of Briggs, obtained before the commencement of this suit, they sold the wood in question.

Upon these facts the county court rendered judgment for the plaintiff for the value of the wood as specified in the receipt, with interest from the date of the demand on the defendants, the amount of such judgment being less than that of the execution in favor of Gleason and against Briggs, to which judgment the defendants excepted.

*Roberts & Chittenden,* for the defendants.

*Hard & French,* for the plaintiff.

BARRETT, J. The attachment made by Mason of the property in question was legal and valid. Some five months afterwards, the defendants gave him a receipt for said property, and as is to be inferred, took it into their possession. By virtue of that attachment Mason was entitled to take and hold the actual custody of the property. In the contemplation of the law it was in his custody and possession from the time of the attachment. By so attaching the property, he assumed a relation of accountability for it, in the first instance, both to the creditor and the debtor in the writ, and that accountability would continue till discharged, either by the act of the parties or as the result of a sale and application of the property pursuant to the provisions of

the law. While that accountability should continue he was entitled to possess, control and dispose of the property in fulfillment of his duties to the parties. It appears, as is claimed, that as to Mr. Briggs, such accountability had ceased before this suit was brought. Had it ceased as to Gleason, or has it since ceased? If so, it is in consequence of what he has done in reference to the property since it was attached by Mason. That consists in having, as deputy sheriff, left a copy of a writ in the town clerk's office and making a return on the original, purporting thereby to attach said property in behalf of another person.

Although an attachment of personal property, by leaving a copy in the town clerk's office, vests in the attaching officer the right of possession, still, as between several attachments, made by different officers, it is clear that the lien and right acquired by the prior cannot be affected by the official force, *proprio vigore*, of the subsequent attachment. As against Briggs and all his subsequently attaching creditors, Mason, by his attachment on Gleason's writ, had acquired the right of exclusive possession of the property attached. Under the statute law of the State, as it then was, Gleason, as deputy sheriff, could not, in virtue of his official prerogative, divest Mason either of possession or the right of possession.

In point of fact, Gleason has not assented, by any express claim, nor exercised by any manual act in his own favor, either personally or officially, any possession of the property. Moreover, it appears that the creditor for whom Gleason made said attachment has not so prosecuted his suit and claim as to have fixed on Gleason any official liability resulting from his having made such attachment. Judgment was recovered in that suit March Term, 1852, and the present defendants paid it without any steps being taken to charge said property in execution, and thereupon they sold and disposed of the wood, being the property in question.

The receipt given by the defendants to Mason, recognizes the attachment that Gleason had made as deputy sheriff.

Gleason's suit against Briggs was duly prosecuted to final judgment, and execution was taken out and placed in Mason's hands, as an authorized officer, seasonably to charge the property, and Mason, as such officer, made demand thereof seasona-

bly to fix whatever liability the defendants might be under by virtue of said receipt.

As before stated, the right of Mason to the possession of the property under the attachment made by him, was not supplanted by the *official* force of the attachment made by Gleason, as deputy sheriff, on the National Life Insurance Company's writ. It therefore remains to inquire whether Gleason has done anything in his personal as distinguished from his official character and right, that absolved Mason from his official duty to retain his possession of, and to respond for the property attached by him on Gleason's writ.

We are unable to see wherein he has so done. Every feature of the case seems to indicate the reverse. His withholding the service of the writ in his hands till he had procured the writ in his own favor and caused it to be served, his refraining to take possession of the property, or in any way manually to interfere with it, his taking out execution and delivering it to Mason, for the purpose of charging the property thereupon, clearly show his continued purpose to stand upon a right acquired by virtue of the attachment made by Mason. The course pursued by Mason in taking the receipt and consenting to be authorized in the execution, and taking the proper steps to charge the property and to charge the defendants as receiptors, shows that he regarded himself in no way absolved from his rights and duties, as the attaching officer, by what Gleason had done. The course taken by the defendants themselves seems to have been adopted in the same view. In giving their receipt for the property to Mason in January, 1852, and therein specially recognizing the attachment that Gleason had made as deputy sheriff, and subsequently paying the judgment obtained under said attachment without taking any steps to charge said attached property in execution upon said judgment, and finally selling the property thus receipted, they put it beyond Gleason's power to make the attachment by him as deputy sheriff operative upon the property itself, and at the same time relieved him from any duty to do so.

We fully recognize the authority of the cases cited in the Massachusetts Reports. They but affirm and apply a well settled elementary principle as to the effect of a resumption of property

by the bailor or pledgor upon his claim of right in respect thereto as against the bailee or pledgee. There have been several decisions in this State of a similar character. It is difficult to apply them in this case, because it does not appear that Gleason has, either officially or personally, interfered with Mason's right and duty to hold possession of the property under the attachment made by him. Hence, in our opinion, Mason is to be regarded as still standing under that duty, and, of course, upon the correlative right to make the property available by virtue of his attachment of it upon Gleason's writ.

The judgment of the county court is affirmed.